**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:18-CR-45(1) |
| | § | |
| DUSTIN SHAWN HISEL | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Dustin Shawn Hisel's ("Hisel") *pro se* Motion for Compassionate Release and Appointment of Counsel (#54), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his medical condition, the threat of the Coronavirus Disease 2019 ("COVID-19"), and his rehabilitation efforts. The Government filed a response in opposition (#58). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.     Background

On March 9, 2018, the Government filed a Criminal Complaint (#1), supported by an eighteen-page affidavit authored by an agent of the Federal Bureau of Investigation (#2), charging Hisel with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). On March 14, 2018, a federal grand jury in the Eastern District of Texas returned a one-count Indictment charging Hisel in Count 1 with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). On May 10, 2018, Hisel pleaded guilty to Count 1 of the Indictment pursuant to a written plea agreement. On September 6, 2018, the court sentenced Hisel to 180 months' imprisonment, to be followed by a ten-year term of supervised release. Hisel is

currently housed at United States Penitentiary Yazoo City ("USP Yazoo City"), located in Yazoo City, Mississippi.  His projected release date is December 18, 2030.

II.     Appointment of Counsel

Hisel requests the appointment of counsel in the title of his motion, but he does not address his request for counsel in the body of the motion.  The court assumes, however, that he is seeking the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with

factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Hisel is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582.  *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings.").  Moreover, Hisel provides no basis for the court to

conclude that the appointment of counsel would benefit him or the court in addressing his motion. Hisel adduces no reasons and advances no arguments regarding the need for appointed counsel in his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Hisel has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Hisel is 45 years old, has a college degree, worked for a number of years as a respiratory therapist, and does not appear to be seriously ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Hisel's motion for appointment of counsel must be rejected.

III.   <u>Analysis</u>

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate

5

release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

On April 5, 2020, Hisel filed a request for compassionate release with the warden of his facility on the grounds that he has high blood pressure, a high heart rate, sleep apnea, and is over 40 years old.  He also mentions that he is seeking to re-obtain his respiratory therapy license and to resume his prior career, adding "[h]elping kids and adults has been the number one thing in my life and has been since I was at a young age."  On May 4, 2020, Warden Mark K. Williams denied Hisel's request, stating: "Health Services staff have reviewed your medical records and determined you do not meet the criteria for a compassionate release reduction in sentence at this time" and "your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence."  Although Hisel complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria.  *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise

discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 846 F. App'x 275 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392.  Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13). A review of dictionary definitions also sheds light on the meaning of these terms. The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, Merriam-Webster's Collegiate Dictionary (11th ed. 2007); *Compelling*, Merriam-Webster's Collegiate Dictionary (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United*

*States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

      1.   <u>Medical Condition</u>

In the present motion, Hisel contends that he is eligible for compassionate release due to his medical condition—specifically, that he suffers from anxiety, depression, sleep apnea, pre-diabetes, obesity, and hypertension (high blood pressure).  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

When interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on July 12, 2018, and revised on August 20, 2018, Hisel reported that he suffered from high blood pressure, high cholesterol, arthritis, occasional chest pain, occasional hypoglycemic symptoms, and sleep apnea.  He indicated that he took medication for high blood pressure, pain, and high cholesterol.  Additionally, at the time, Hisel was 6 feet, 3 inches tall and weighed 225 pounds, giving him a body mass index ("BMI") of 28.1, which is considered overweight.[4]

---

[4] According to the Centers for Disease Control and Prevention ("CDC"), a BMI below 18.5 is underweight, a BMI between 18.5 and 24.9 is normal, a BMI between 25 and 29.9 is overweight, and a BMI of 30 or above is obese.

According to Hisel's BOP medical records, he has been diagnosed with hypertension (high blood pressure), hyperlipidemia (high cholesterol), osteoarthritis of knee unspecified, and myopia (near sightedness).  He is currently prescribed amlodipine, hydrochlorothiazide, and aspirin to control his hypertension and atorvastatin to manage his hyperlipidemia.  Hisel's latest blood pressure readings—138/100 on December 16, 2021, 157/101 on May 27, 2021, and 130/85 on January 25, 2021—indicate that he is either at risk for or has high blood pressure.[5]  Hisel also appears to be obese, as his latest recorded weight, 266 pounds on May 27, 2021, gives him a BMI of 33.2.  Medical staff have repeatedly counseled Hisel about his diet, exercise, and the need for weight loss.  At a more recent clinical encounter on December 16, 2021, N. Natal-Castro, M.D., noted that Hisel "[r]eports intentional weight loss, he has been exercising for that and eating better and low sodium diet for blood pressure control."  Hisel is furnished eye glasses by the BOP for his myopia.  An x-ray report of Hisel's right knee authored by Farhad Khorashadi, M.D. ("Dr. Khorashadi"), on April 12, 2021, ruled out osteoarthritis.  Dr. Khorashadi found:  "No arthritic marginal osteophyte formation or subchondral sclerosis or cystic identified.  Articular surfaces appear smooth."  The two views of Hisel's right knee showed no fracture or malalignment, but only "[m]ild degenerative medial compartment joint space narrowing."  Hisel is classified as a BOP Medical Care Level 1 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

---

[5] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

None of Hisel's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433.  The court acknowledges that, according to the CDC's website, two of Hisel's underlying medical conditions—hypertension and obesity—can make him more likely to become severely ill should he contract COVID-19; nonetheless, such commonplace maladies do not make Hisel's case "extraordinary." *See id.* at 434.

According to the CDC, 42.5% of the adult population in the United States is obese and 73.6% is overweight.  Moreover, the CDC reports that 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control.  In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol.    Due to their pervasiveness, obesity, hypertension, and hyperlipidemia cannot be deemed "extraordinary" in order to merit compassionate release.  *See United States v. Whited*, No. 21-1644, 2022 WL 1259028, at *2 (7th Cir. Apr. 28, 2022) (affirming denial of compassionate release when the district court concluded that the defendant, who suffered from cardiomyopathy, hyperlipidemia, and other medical conditions, failed to establish extraordinary and compelling reasons for release); *United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Reeves*, No. 7:15CR00047-001, 2022 WL 72780, at *1 (W.D. Va.

Jan. 7, 2022) (finding that a defendant, who suffered from obesity, diabetes, and cardiomyopathy, had not established extraordinary and compelling reasons for his early release); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. Jan. 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary]

that injustice would result if the relief is not granted"); *United States v. Bolze*, 460 F. Supp. 3d 697, 709 (E.D. Tenn. 2020) (finding that extraordinary and compelling circumstances did not exist where the defendant suffered from congestive heart failure, hyperlipidemia, hypertension, cardiomyopathy, and migraine headaches).

In this instance, Hisel's BOP records indicate that he is housed in general population, is ambulatory, has no work restrictions, and is cleared for food service.  In his motion, Hisel states that he is currently in an apprenticeship program for culinary arts offered by the BOP.  He is able to provide self-care in the institutional setting and is not limited in his activities of daily living. Clearly, Hisel's long-standing conditions—namely, hypertension, high cholesterol, and being overweight—did not hamper or prevent him from committing his offense of conviction.  Thus, Hisel has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

### 2.      COVID-19

Hisel also expresses concerns about contracting COVID-19 while incarcerated.  He contends that due to his medical condition and the "melting pot of potential sickness and death" present in prison, his "life remains at risk" and that he "faces grave danger due to COVID-19." Nevertheless, as of June 2, 2022, the figures available at www.bop.gov list 1 inmate (out of a total inmate population of 672) and 1 staff member at USP Yazoo City as having confirmed positive cases of COVID-19, 2 inmates who succumbed to the disease, and 465 inmates and 24 staff members who have recovered.  Thus, it appears that the facility where Hisel is housed is currently handling the outbreak appropriately and providing adequate medical care.

14

Moreover, Hisel seems to overlook the fact that he has already contracted the virus twice and recovered without incident.  His BOP medical records do not reflect that he required hospitalization or any special treatment; further, there is no indication that he is suffering from any long-term effects of the disease.  Although Hisel expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Hisel, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting

15

a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Hisel, have already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26,

2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 319,252 doses of the vaccine. According to www.bop.gov, FCC Yazoo City, where the defendant is housed, has fully inoculated 3,153 inmates and 266 staff members. Indeed, according to Hisel's BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on March 9, 2021, and the second dose on March 30, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2

17

(S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

Similar to the prisoner in *United States v. Wymer*, who contended that his imprisonment was tantamount to a "death sentence" due to the presence of COVID-19, Hisel's "contentions are overblown and unrealistic." No. 3:13-cr-00134-JG-1, ___ F. Supp. 3d ___, 2021 WL 5707188, at *1 (N.D. Ohio Dec. 1, 2021).   Simply put, in this situation, Hisel's mere anxiety and unfounded apprehensions about his continued incarceration do not warrant compassionate release. *See id.* at *3.

### 3.   Rehabilitation

Hisel maintains that his "exemplary rehabilitation efforts" establish extraordinary and compelling reasons for his early release from prison.  He contends that he has completed myriad adult continuing education programs, Bible study programs, and nationally recognized vocational training courses.  He also points out that he has no disciplinary record.  In addition, Hisel is attempting to have his respiratory therapist license reinstated.  While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United*

*States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). While Hisel has maintained a good disciplinary record while incarcerated, the Seventh Circuit has found a similar argument not to be extraordinary and compelling. *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (rejecting compassionate release of a prisoner reasoning that "[m]ost nonviolent criminals maintain good disciplinary records").

Thus, although Hisel lists a number of commendable achievements and future goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at

rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  Similarly, the court hopes that Hisel will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on either his medical condition or his rehabilitation efforts.  *See Lewis*, 2021 WL 4519795, at *3.

C.  Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in

denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).   Hisel's offense of conviction entails his attempted coercion and enticement of a minor to engage in sexual activity.

The nature and circumstances of the offense are outlined in the Factual Basis (#32) in which Hisel stipulated and agreed that the following facts are true and correct:

1.      As charged in Count One of the Indictment, between on or about January 9, 2018, and on or about March 8, 2018, in the Eastern District of Texas, Hisel did knowingly attempt to persuade, induce, entice, or coerce a minor to engage in sexual activity.

2.      Specifically, on January 9, 2018, law enforcement responded to an online ad Hisel placed that was entitled "Perv . . . .taboo - m4m" and seeking "someone into perv or taboo things . . [sic] young or incest to be specific."   After exchanging some preliminary messages via email, on February 23, 2018, Hisel and the agent began communicating via a texting application.   Between February 23, 2018, and March 8, 2018, Hisel engaged in repeated and ongoing communications with the individual he believed to have access to a minor child, seeking to engage in sexual activity with the minor child.

3.      Hisel communicated with an individual who[m] he believed was offering a minor child for sex via the Internet, email, a social media application, and cellular communications, through digital computer media, including his Samsung cellular phone.

4.      At the time of his communications, Hisel believed that he would meet with a female child under the age of 18-years-old for sexual activity and, in fact, that the child had not attained the age of 12-years-old.

5.      Hisel engaged in sexually explicit online and cellular conversations with an individual who[m] he believed had access to a minor child, during which Hisel expressed a desire to touch the child's genitals, ejaculate on the child's body, and to engage in oral and vaginal intercourse with the minor child.   Further, Hisel discussed his intent to persuade, induce, entice, and coerce the child into engaging in sexual activity, including sending pictures of himself to show the child, as well as the child's interests, gifts that the child might like, her sexual experience, and the parameters of sexual contact with the child.

6.     Hisel admits that had he engaged in oral and vaginal intercourse with a minor under the age of 12, he could have been charged with violations of the law of the State of Texas, including Aggravated Sexual Assault, Texas Penal Code § 22.021.

7.     Hisel further admits that the Internet and cellular communicatons are both means and facilities of interstate and foreign commerce.

Hisel signed the Factual Basis on April 4, 2018, after acknowledging, "I have read this Factual Basis and have discussed it with my attorney.  I fully understand the content of this Factual Basis and agree without reservation that is accurately describes my acts."  Hisel confirmed under oath the truth and accuracy of the facts set forth in the Factual Basis at his plea hearing on May 10, 2018.

As set forth in the PSR, over the course of the chats, Hisel messaged, in detail, about his interest in spending time with the child, whom he believed to be an 11-year-old female, including taking her to an amusement park, the zoo, and movies, as well as having sleepovers with the child and her friends.  His interest in the child, however, was clearly sexual.  He sent photos of his bare chest and face and another of him holding his erect penis to the undercover agent, whom he believed to be the father of the child, to show her.  He requested photographs of the child.  Hisel described various sexual acts he wanted to perform on the child, including:

Touching her genitals, kissing her, rubbing his penis on her vagina, inserting his fingers into her vagina, putting lotion on her, showering/bathing with her, ejaculating on her various body parts, and having sex with her.

Ultimately, Hisel traveled from Sherman, in Grayson County, Texas, to Plano, in Collin County, Texas, to meet the child for sex.  At the time of his arrest, he was carrying a present for the child, a unicorn figurine, for which he paid $75.

22

Further, in the chats, Hisel admitted to having prior sexual experiences with children, including touching the breasts of teenagers while working as a respiratory therapist and having sexual contact with a 6-year-old girl on two occasions when he lived in Wisconsin.  He explained that the sexual contact with the child occurred in front of her father, who was masturbating, and included touching the child's genitals, receiving oral sex from the child, ejaculating on her genitals, and inserting his finger into the child's vagina.  Hisel subsequently denied having any prior sexual contact with children, although he said a 16-year-old patient "came on to (him)" when he worked at a hospital in Wisconsin.

Hisel has a history of substance abuse, including the daily use of marijuana and narco (hydrocodone/acetaminopen) as well as the excessive use of alcohol up to the date of his arrest in 2018.  "Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022).  Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *accord Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of his offense of conviction, his admitted interest in engaging in

sexual activities with minors, his prior descriptions of engaging in sexual acts with teenagers and a 6-year-old child, and his history of substance abuse, the court cannot conclude that Hisel's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. *See United States v. Pitcock*, No. 15-CR-60222, 2020 WL 3129135, *4 (S.D. Fla. June 12, 2020) (denying motion for release notwithstanding health conditions because the defendant possessed and transported a large volume of child pornography, noting that "while the Defendant has served a majority of his sentence and has eleven months remaining, there is no evidence before the Court that he has completed any treatment regimen or programs that would inform whether the Defendant is no longer a danger"). In this instance, there is similarly no evidence before the court that Hisel has completed any treatment programs or courses focusing on his sexual interest in children. Moreover, according to a letter to the court he filed in January 2021 (#47), Hisel is "desperately trying to have [his] respiratory therapist license reinstated," which would allow him access to minors who are especially vulnerable in the hospital setting.

In addition, granting Hisel compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the

24

§ 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Hisel after he has served only about 28% of his 180-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Hisel's track record is similarly a poor one. There is no reason to believe that Hisel would not revert to acting on his expressed desire to engage in sexual activities with children as well as the daily use of illicit substances if released from prison at this time.

IV.    Conclusion

In sum, Hisel has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*,

25

455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Hisel's *pro se* Motion for Compassionate Release and Appointment of Counsel (#54) is DENIED.

SIGNED at Beaumont, Texas, this 3rd day of June, 2022.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE