| | |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:18-CR-45(1) |
| | § | |
| DUSTIN SHAWN HISEL | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Dustin Shawn Hisel's ("Hisel") *pro se* Motion to Reconsider Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#61). Hisel, age 45, maintains that he filed this motion due to continued COVID-19 physical and mental health concerns and exemplary rehabilitation efforts. United States Probation and Pretrial Services ("Probation") conducted an investigation and filed a report recommending that the motion be denied. Having considered the motion, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On March 9, 2018, the Government filed a Criminal Complaint, supported by an eighteen-page affidavit authored by an agent of the Federal Bureau of Investigation, charging Hisel with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). On March 14, 2018, a federal grand jury in the Eastern District of Texas returned a one-count Indictment charging Hisel in Count 1 with Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). On May 10, 2018, Hisel pleaded guilty to Count 1 of the Indictment pursuant to a written plea agreement. On September 6, 2018, the court sentenced Hisel to 180 months' imprisonment, to be followed by a ten-year term of supervised release. Hisel is currently housed at Federal Correctional Institution Yazoo City Medium ("FCI Yazoo City Medium"),

located in Yazoo City, Mississippi. His projected release date is December 18, 2030. Hisel previously filed a *pro se* Motion for Compassionate Release (#54) raising many of the same issues he asserts in his current motion, which the court denied by Memorandum and Order dated June 3, 2022 (#60).

III.    Analysis

In the instant motion, Hisel does not present any new bases for relief, assert any novel legal arguments, raise any significant factual or legal issues warranting redress, show that he is receiving inadequate health care at the federal correctional institution where he is housed, establish that he would not pose a danger to society if released, or otherwise demonstrate that compassionate release is warranted.

A.    COVID-19 and Health Concerns

With regard to his health concerns, Probation confirms that Hisel's current medical status remains stable and his various afflictions—hypertension (high blood pressure), hyperlipidemia (high cholesterol), osteoarthritis of knee unspecified, and myopia (near sightedness)—have been treated with success in prison, as discussed in depth in the court's prior Memorandum and Order. He is classified by the Federal Bureau of Prisons ("BOP") as a Medical Care Level I inmate, indicating that he is healthy or requires only simple chronic care. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." Hisel's BOP records indicate that he is housed in general population, is ambulatory, has no work restrictions, and is cleared for food service. In his motion, Hisel states that he is currently completing a nationally recognized, restaurant management course

offered by the BOP. Hisel is able to provide self-care in the institutional setting and is not limited in his activities of daily living.

As with his initial motion, Hisel seemingly overlooks the fact that he previously contracted COVID-19 twice before, once in 2020 and again in 2022, and recovered without incident. His BOP medical records do not reflect that he required hospitalization or any special treatment; further, there is no indication that he is suffering from any long-term effects of the disease. Although Hisel expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage an outbreak within his correctional facility or that the facility is specifically unable to treat Hisel, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated. *See United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir.), *cert. denied*, 141 S. Ct. 2688 (2021)); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Moreover, Hisel has been fully vaccinated for COVID-19, receiving the first dose of the Pfizer-BioNTech vaccine on March 9, 2021, and the second dose on March 30, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Gibson*, No. 14-86, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021) ("Courts have held that, once vaccinated, the efficacy of the COVID-19 vaccines preclude[s] the argument that a prisoner's susceptibility to the

3

disease is extraordinary and compelling for purposes of § 3582(c)(1)(A)."); *United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19). Furthermore, as of January 29, 2023, the figures available at www.bop.gov list 2 inmates (out of a total inmate population of 1564) and 0 staff members at FCI Yazoo City Medium as having confirmed positive cases of COVID-19, and 878 inmates and 31 staff members who have recovered. In addition, 3,624 inmates and 408 staff members at Federal Correctional Complex Yazoo City have been fully inoculated for COVID-19. Thus, it appears that the facility where Hisel is currently housed is handling the virus appropriately and providing adequate medical care.

B.  Rehabilitation

Hisel contends that he has taken advantage of all educational and vocational training opportunities afforded him by the BOP. As noted above, he is nearing completion of a vocational training program in restaurant management. Hisel further maintains that although the BOP has provided him no psychological treatment focusing on his sexual interest in children, he has taken the initiative to deepen his faith, educate himself, and seek treatment options from professionals through the International Christian College & Seminary.

While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t); *see United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021); *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). Further, "making good use of one's time in prison and

5

regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wisc. Mar. 9. 2020).

Thus, although Hisel lists a number of commendable achievements and worthy goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *see also United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).

Similarly, while the court hopes that Hisel will carry on his "commitment to rehabilitation and to his continued self-reflection," the court declines to exercise its discretionary authority to

reduce his sentence under § 3582 at this time based on either his health concerns or his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3. The Fifth Circuit has recently commented that the use of the terms "extraordinary" and "compelling" in the context of compassionate release "explains why prisoners can seek relief under § 3582(c)(1) only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *United States v. Escajeda*, ___ F.4th ___, No. 21-50870, 2023 WL 195798, at *1 (5th Cir. Jan. 17, 2023). Hisel faces no such exigency.

### C.    Section 3553(a) Factors

As before, the court finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Hisel's offense of conviction entails his attempted persuasion, inducement, enticement, and coercion of a minor to engage in sexual activity.

The nature and circumstances of his offense are outlined in the Factual Basis, which details the efforts Hisel undertook to coerce and entice a minor to engage in sexual activity with him. Hisel placed an online ad entitled "Perv . . . taboo - m4m" in which he sought "someone into perv and taboo things . . young or incest to be specific." He began communicating with an undercover agent whom he believed to have access to an 11-year-old female seeking to engage in sexual

activity with the minor child.  He communicated through the internet, Kik messenger, email, social media, cellular phone, and digital computer media in an attempt to meet the child in order to touch her genitals, ejaculate on her body, and engage in oral and vaginal intercourse with her. Hisel sent photos of himself to show the child and inquired about her interests, gifts she might like, her sexual experience, and the parameters of sexual contact with the child.

As set forth in his Presentence Investigation Report, over the course of the chats, Hisel elaborated in detail about his interest in spending time with the child, including taking her to an amusement park, the zoo, and movies, as well as having sleepovers with the child and her friends. His interest in the child, however, was primarily sexual in nature.  He sent photographs of his bare chest and face and another of him holding his erect penis to the undercover agent, whom he believed to be the father of the child, to show her.  He requested photographs of the child.  Hisel described various sexual acts he wanted to perform on the child, including: touching her genitals, kissing her, rubbing his penis on her vagina, inserting his fingers into her vagina, putting lotion on her, showering/bathing with her, ejaculating on her various body parts, and having sex with her.  Further, in the chats, Hisel admitted to having prior sexual experiences with children, including touching the breasts of teenagers while working as a respiratory therapist and having sexual contact with a 6-year-old girl on two occasions when he lived in Wisconsin.  Ultimately, Hisel traveled from Sherman, in Grayson County, Texas, to Plano, in Collin County, Texas, to meet the child for sex.  At the time of his arrest, he was carrying a present for the child, a unicorn figurine, for which he paid $75.  Hisel also has a history of substance abuse, including the daily use of marijuana and narco (hydrocodone/acetaminopen) as well as the excessive use of alcohol up to the date of his arrest in 2018.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see United States v. Rollins*, 53 F.4th 353, 358-60 (5th Cir. 2022) (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").

In view of the nature and circumstances of his offense of conviction, his admitted interest in engaging in sexual activities with minors, and his history of substance abuse, the court cannot conclude that Hisel's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. *Chambliss*, 948 F.3d at 693; *see Gharib*, 2022 WL 1565352, at *1. Where, as here, a prisoner

has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *accord Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").

In addition, granting Hisel compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.*; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord Rodriguez*, 27 F.4th at 1100. In the case at bar, releasing Hisel after he has

10

served only approximately 32.5% of his 180-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

III.   Conclusion

For the foregoing reasons, Hisel's *pro se* Motion to Reconsider Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#61) is DENIED.  Hisel is advised that the court will not consider yet another motion for reconsideration unless he can show a significant change in circumstances.

SIGNED at Beaumont, Texas, this 30th day of January, 2023.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE